**Eugene Harris CORBETT, Petitioner,**

v.

**Hoyt BRILL, in His Capacity as Warden of the Prairie Correctional Facility Defendant.**

No. CIV. 99–471 ACK BMK.

United States District Court,
D. Hawaii.

July 31, 2000.

**652**

Sarah Courageous, Honolulu, HI, John S. Edmunds, Wesley D. Shimazu, Edmunds Maki Verga & Thorn, Honolulu, HI, for Eugene Harris Corbett, petitioner.

Hoyt Brill, Appleton, HI, Pro Se.

Kevin S. Hashizaki, Office of the Prosecuting Attorney, Hilo, HI, for State of Hawaii, respondent.

## ORDER ADOPTING THE FINDINGS AND RECOMMENDATIONS OF THE MAGISTRATE BACKGROUND

KAY, District Judge.

Eugene Harris Corbett ("Petitioner") objects to the Findings and Recommenda-

tion ("F & R") that his petition for writ of habeas corpus under 28 U.S.C. § 2254 be denied.

A Hawaii state court convicted Petitioner of murder in the second degree in 1990 for the shooting death of Keith Talley. He subsequently entered a plea of no contest to a firearms charge.[1] Throughout the state trial, Deputy Public Defender Francis P. Akamine ("Akamine") represented Petitioner. Petitioner's conviction for murder was affirmed by the Hawaii Supreme Court later that year. In 1997, a state court denied his petition for post-conviction relief where he claimed, *inter alia,* ineffective assistance of counsel. The Hawaii Supreme Court affirmed the conviction in 1998.

On June 30, 1999 Petitioner filed his Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 ("the Petition") against Hoyt Brill ("Respondent"), the warden of the correctional facility where Petitioner is incarcerated. Petitioner argued that Akamine violated his Sixth Amendment right to effective assistance of counsel. Specifically, he alleged that Akamine was ineffective by failing to fully investigate the mitigating defense of extreme mental or emotional distress ("EMED") until the eve of trial, subsequently failing to seek a continuance of trial so as to investigate the EMED defense, and finally, failing to obtain the testimony of an expert witness to help support an EMED defense. *See* Petition at 5–6.

Petitioner alleges that he was prejudiced because the jury might have found him guilty of the lesser included offense of manslaughter (instead of second degree murder) if Akamine had presented a full EMED defense. Defendants who raise an EMED defense must demonstrate that they acted under a loss of self-control that resulted from an extreme mental or emo-

tional disturbance. According to H.R.S. § 707–702, successful invocation of the EMED defense in a trial for murder in the first and second degrees reduces the offense to manslaughter. Manslaughter carries a much lighter penalty than second degree murder.

On January 24, 2000, Magistrate Judge Barry M. Kurren issued the F & R recommending that the Petition be denied. The F & R held that Petitioner met the first prong of the ineffective assistance of counsel test because Akamine's failure to promptly discover evidence of EMED fell below an objective standard of reasonable performance.[2] *See* F & R at 10. The F & R did not find that Petitioner met the second prong of the ineffective assistance of counsel test, however, and therefore recommended denying the Petition. *See* F & R at 13. The F & R found that Petitioner had not shown that he was prejudiced by Akamine's performance because Akamine argued EMED to the jury and the jury did not need an expert witness to assess whether or not Petitioner acted under EMED when he shot Talley.

Pursuant to his right to object to an F & R within ten days under 28 U.S.C. § 636(b), Petitioner filed his Written Objections to the [F & R] ("Objections") on February 7, 2000. On March 7, 2000, without leave of court, Petitioner filed his Supplemental Written Objections to the [F & R] ("Supplemental Objections"). Respondent did not file a response.

### STANDARD OF REVIEW

With respect to a magistrate judge's case dispositive proposed order, findings, or recommendation, any party may object, and the district court must review *de novo* those portions of the magistrate's findings or recommendation to which objection is made. *See* Local Rule

---

**1.** He pleaded no contest to a violation of H.R.S. § 134–7(b).

**2.** Because the State did not appeal the magistrate's determination of Akamine's unreason-

able performance, the Court adopts the magistrate's finding; although the surrounding circumstances are somewhat questionable.

74.2. The district court may accept, reject, or modify, in whole or in part, the magistrate's findings or recommendation. *See id.* *De novo* review means the court must consider the matter anew, as if it had not been heard before and as if no decision previously had been rendered. *See Ness v. Commissioner,* 954 F.2d 1495, 1497 (9th Cir.1992). Thus, although the district court need not hold a *de novo* hearing, the court's obligation is to arrive at its own independent conclusion about those portions of the magistrate's findings or recommendation to which objections are made. *See United States v. Remsing,* 874 F.2d 614, 617 (9th Cir.1989). The court may accept those portions of the magistrate's findings or recommendation that are not objected to if it is satisfied that there is no clear error on the face of the record. *See Campbell v. United States District Court,* 501 F.2d 196, 206 (9th Cir.1974).

### DISCUSSION

Petitioner states in his Objections that the "only issue in dispute is whether Petitioner was prejudiced by ... Akamine's representation." Objections at 2. Petitioner argues that (1) either Akamine's representation was "so far below the objective standard of reasonableness that prejudice need not be shown," or, (2) "he was prejudiced as a result of ... Akamine's failure to investigate the possibility of raising the defense of [EMED]." Objections at 2.

### A. Review of a Claim Adjudicated in State Court Under 28 U.S.C. § 2254(d)

 Federal habeas relief must be based on a violation of federal law. *See* 28 U.S.C. § 2254(a). Petitioner claims ineffective assistance of counsel. Petitioner raised this same claim in his state post-conviction relief action.

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . .

28 U.S.C. § 2254(d) (emphasis added). The Supreme Court recently held that "unreasonable application" and "contrary to" are two distinct standards of review. *See Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1519, 1523, 146 L.Ed.2d 389 (2000).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams,* 120 S.Ct. at 1523.[3] *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), is clearly established federal law for reviewing ineffective assistance of counsel claims. *See Williams,* 120 S.Ct. at 1512; *Wilson v. Henry,* 185 F.3d 986, 988 (9th Cir.1999). The state court did not analyze Petitioner's ineffective assistance of counsel claim using *Strickland,* however, but instead applied a test from *Dan v. State,* 76 Hawai'i 423, 879 P.2d 528 (1994).[4] *See* Findings of

---

**3.** The distinction between the two prongs does not turn on a classification of the question as one of law or as a mixed question of law and fact, as some earlier Ninth Circuit cases had suggested. *Weighall v. Middle,* 215

F.3d 1058, 1061 n. 4 (9th Cir.2000) (citing *Van Tran v. Lindsey,* 212 F.3d 1143, 1149–50 (9th Cir.2000)).

**4.** The state court applied a two-part test which required Petitioner to show: 1) that

Fact, Conclusions of Law, and Order Denying Motion for Post Conviction Relief at 3, S.P.P. No. 94–002 (Haw.3d Cir.Ct. Jan. 24, 1997) (attached as Exhibit 5 to Respondent's Response to [Petition], Ex. 5) ("State Court Order"). While the *Dan* test appears somewhat similar, it does not make the same prejudice inquiry as that in *Strickland, see* Part B, *infra*, making it somewhat difficult to say if the state court decision was an "unreasonable application of" or "contrary to" *Strickland*. In the situation where a state court fails to apply clearly established Federal law, the federal court should perform its review de novo. *See Wade v. Terhune*, 202 F.3d 1190, 1197 (9th Cir.2000) (doing de novo review of claim adjudicated on merits in state court, instead of doing "contrary to" or "unreasonable application" analysis under § 2254(d), when state court applied state test for peremptory challenges instead of clearly established federal law). Accordingly, this Court will evaluate Petitioner's ineffective assistance of counsel claim directly [5] under *Strickland*.

As a final note, in conducting its review, the Court presumes state court factual findings to be correct.

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebut-

ting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

### B. The *Strickland* Test For Ineffective Assistance of Counsel

 In order to establish a claim of ineffective assistance of counsel, a defendant must demonstrate that (1) in light of all the circumstances, his counsel's performance was outside the "wide range of professionally competent assistance" or that it "fell below an objective standard of reasonableness" by identifying specific material errors or omissions; and (2) his defense was so prejudiced by his counsel's errors that there is a reasonable probability that, but for his counsel's deficient representation, the result of the proceedings would have been different. *See Strickland*, 466 U.S. at 687–88, 690, 695, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052. "Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687, 104 S.Ct. 2052.

 A petitioner must overcome the presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *See id.* at 689–690, 104 S.Ct. 2052; *see also Michel v. Louisi-*

---

there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence; and 2) that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense. *See* State Court Order at 3.

5. The Ninth Circuit followed a similar approach in *MacFarlane v. Walter*, 179 F.3d 1131, 1141–42 (9th Cir.1999), a decision that was later vacated as moot. *See Lehman v. MacFarlane*, —— U.S. ——, 120 S.Ct. 1959, 146 L.Ed.2d 790 (2000) (granting certiorari, vacating judgment as moot, and remanding to Ninth Circuit with instructions to dismiss); *MacFarlane v. Walter*, 216 F.3d 881, 2000 WL 960074, at *1 (9th Cir. July 7, 2000) (dismissing case as moot). In the original Ninth

Circuit opinion, the court reviewed a habeas claim directly under the Supreme Court authority where the state court had not applied the controlling Supreme Court authority. The court stated, "When the state court fails to apply a controlling Supreme Court authority, [a federal court] must examine its decision in light of that authority." *MacFarlane*, 179 F.3d at 1138. Only after finding that the state court had erred under that authority did the court conclude that the state court's decision was contrary to federal law. In other words, the court did not conclude the failure to apply the controlling Supreme Court authority in and of itself made the decision contrary to federal law. *See id.* at 1141–42.

*ana,* 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955) (defendant must overcome presumption of effectiveness, including the possibility that, under the circumstances, the challenged action might be considered sound trial strategy). Judicial scrutiny of counsel's performance must be highly deferential and must take into account all of the facts and circumstances of the particular case, viewed at the time of counsel's conduct. *See Strickland,* 466 U.S. at 688–90, 104 S.Ct. 2052.

A petitioner who raises an ineffective assistance of counsel claim faces a heavy burden. The reason is "[it] is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052.

**C. Petitioner Was Not Prejudiced by Akamine**

As explained above, the F & R found that Petitioner had proven the first prong of *Strickland,* i.e., that his counsel's performance was "below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052. No objection being made to that determination, this Court does not review that part of the F & R. Petitioner does object, however, to the F & R's conclusion that he did not meet the second prong of the *Strickland* test, i.e., that his defense was so prejudiced by his counsel's errors that there is a reasonable probability that, but for the deficient representation, the "decision reached would reasonably likely have been different." *Strickland,* 466 U.S. at 696, 104 S.Ct. 2052.

**1. The Court Will Not Presume Prejudice**

Petitioner first argues that his conviction was invalid because his counsel's fail-

ure to pursue an EMED defense "was so far below the objective standard of reasonableness that prejudice need not be shown," and therefore, that the Court must presume prejudice. *See* Objections at 2. Petitioner contends that his counsel's deficient performance amounts to an "actual or constructive denial of the assistance of counsel altogether" that is "legally presumed to result in prejudice." *See* Objections at 3; *see also Strickland,* 466 U.S. at 692, 104 S.Ct. 2052. In other words, although *Strickland* sets forth a two-prong test, Petitioner argues that he does not need to prove the second prong.

 Petitioner raises his "presumed prejudice" argument for the first time in this appeal.[6] "Arguments raised for the first time on appeal have traditionally been held to be barred, absent exceptional circumstances or a convincing explanation for the failure to present them to the court below." *Greenhow v. Secretary of Health & Human Servs.,* 863 F.2d 633, 638–39 (9th Cir.1988) (applying rule to appeal from magistrate F & R), *overruled on other grounds by United States v. Hardesty,* 977 F.2d 1347, 1348 (9th Cir.1992). The Petition contained no argument that the Court should presume prejudice, but instead affirmatively tried to prove prejudice by Akamine's conduct. *See* Petition at 14–16. Petitioner presents no exceptional circumstances that would allow him to raise this argument for the first time on appeal. The Court finds no such exceptional circumstances and therefore holds that Petitioner's presumed prejudice argument is barred.

 Even if the Court found that Petitioner had properly raised this argument earlier, it is inapplicable to the instant case. As explained above, normally, "[u]nless a defendant makes both showings [required by *Strickland* ], it cannot be said

---

6. Respondent did not file a reply to the Objections, and, therefore, has not responded to

this argument.

that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. However, there are circumstances in which prejudice is presumed. Courts presume prejudice when the assistance of counsel is "actual[ly] or constructive[ly]" denied altogether. *See Strickland,* 466 U.S. at 692, 104 S.Ct. 2052. To be denied "altogether," the defendant must be prevented the company and advice of counsel. *See, e.g., United States v. Miguel,* 111 F.3d 666, 673 (9th Cir.1997) (rejecting a presumption of prejudice for a defendant who was deprived of communication with his attorney while the attorney deposed a child witness, when defendant had a second attorney with whom he might have communicated). Such "actual or constructive denial" takes place when there is state interference with counsel's assistance. *See, e.g., Geders v. United States,* 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976) (presuming prejudice when a lower court barred an attorney-client consultation during overnight recess). Prejudice is also presumed when counsel is burdened by an actual conflict of interest, counsel actively represented conflicting interests, and this actual conflict of interest adversely affected the counsel's performance. *See Strickland,* 466 U.S. at 692, 104 S.Ct. 2052 (citing *Cuyler v. Sullivan,* 446 U.S. 335, 350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)).

Despite Petitioner's conclusory allegation, he shows no actual or constructive denial of the assistance of his counsel in the instant case. Petitioner does not allege that the lower court interfered in any way with his defense. Nor does Petitioner allege any conflict of interest on the part of Akamine. Petitioner simply alleges that his attorney was ineffective. "[A]ctual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." *Strickland,*

466 U.S. at 693, 104 S.Ct. 2052. The Court finds that a presumption of prejudice is inappropriate in the instant case.

## 2. The Court Does Not Find Prejudice

▇▇ Petitioner argues in the alternative that, if the Court refuses to presume prejudice, he can prove that Akamine's deficient performance prejudiced his case. An effective EMED defense, according to Petitioner, requires expert testimony to explain the mental state, the duration of the mental disorder, and the effect upon the Petitioner. Petitioner argues that Akamine's failure to investigate EMED prevented Akamine from obtaining an expert witness to explain EMED to the jury, which in turn "substantially lessened" the reasonable probability of obtaining a conviction under the lesser charge of manslaughter. *See* Petition at 15.

Respondents argued before the magistrate that Akamine's deficient performance and his failure to provide an expert witness to support an EMED defense was not prejudicial.[7] They argued that expert testimony would not have changed the outcome of the case. They pointed to the fact that Petitioner presented facts regarding an EMED defense, the court instructed the jury with regard to an EMED defense, and the jury was free to infer or reject the presence of EMED without the assistance of an expert.

"Even if a defendant shows that particular errors of counsel were unreasonable ... the defendant must show that they actually had an adverse effect on the defense." *Strickland,* 466 U.S. at 693, 104 S.Ct. 2052. To prove prejudice, Petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 695, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine

7. As explained above, Respondent did not file any sort of reply to the Objections. The Court

therefore takes these arguments from Respondents Response to the Petition.

confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052.

The Supreme Court recently found a reasonable probability that the results of a sentencing phase would have been different, and therefore, that the proceedings had been prejudiced, when defense counsel completely failed to present a history of neglect and borderline mental retardation as mitigating evidence against a death sentence. *See Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1514, 1515, 146 L.Ed.2d 389 (2000); *see also Evans v. Lewis,* 855 F.2d 631, 637 (9th Cir.1988) (holding that defense counsel's complete failure to present evidence of mental illness as mitigating evidence against a death sentence was prejudicial).

In contrast, courts have found that there is no prejudice where counsel puts an issue before the jury, but omits supporting evidence. In *Wade v. Calderon,* 29 F.3d 1312, 1318–19 (9th Cir.1994), for instance, the court found no prejudice where counsel presented expert testimony to support a defense, but failed to buttress this testimony with additional corroborating witnesses. Similarly, in *United States v. Wheeler,* 81 F.3d 171, No. 95–15852, 1996 WL 155139, (9th Cir. Apr.2, 1996), the court found no prejudice where counsel elicited the required testimony from one witness, but failed to corroborate it with an expert's testimony. *Cf. Weighall,* 215 F.3d at 1062–63 (no prejudice from attorney's failure to obtain an additional instruction on a defense when attorney put on evidence supporting the defense, obtained a general instruction on the defense, and argued the defense in closing).

In the instant case, Petitioner's counsel did not completely fail to present evidence for the mitigating EMED defense. Indeed, as the state court reviewing Petitioner's habeas petition found, "at trial, DPD Akamine elicited sufficient evidence to support a manslaughter instruction and argue 'extreme mental or emotional disturbance.'" State Court Order at 3. This finding of fact is presumed correct. *See*

§ 2254(e)(1). Akamine called upon Petitioner to testify about his mental state with regard to the decedent's relationship with Petitioner's estranged girlfriend. State Court Order at 3. Specifically, Petitioner testified about his relationship with his girlfriend. *See* State Response to Petition, Ex 7, Tr. of Jan 30, 1989, at 68 *et seq.* He explained that on the morning of the shooting, he became "really mad" after learning that the decedent had taken advantage of his girlfriend sexually. *Id.* at 73–74. According to Petitioner's testimony, after hearing this information, he "walked down the beach," sat, and smoked a cigarette. *See id.* Petitioner testified that he was not able to get the picture of the decedent and his girlfriend together out of his mind. *See id.* at 74. It was then that Petitioner went and borrowed a rifle. *See id.* Following the presentation of the evidence, Akamine argued the EMED defense and the trial court instructed the jury with regard to it. *See* State Court Order at 4. The jury clearly had evidence to assess whether Petitioner shot the victim while under the influence of EMED.

The absence of an expert's explanation of the EMED defense does not undermine the second degree murder conviction. The Court notes that while Hawaii courts allow the inclusion of expert testimony to buttress claims of EMED, such testimony has never been held to be a requirement. *See State v. Perez,* 90 Hawai'i 65, 75, 976 P.2d 379, 389 (1999). A jury is free to infer a defendant's state of mind "via evidence of [his] conduct and demeanor at the time of the charged offense." *Id.*

Akamine only failed to present supporting evidence to buttress an EMED defense; he did not completely fail to present an EMED defense altogether. Thus, this is not a case like *Williams* or *Evans,* where all mitigating evidence was omitted or where the attorney failed completely to pursue a viable defense. Instead, Akamine raised, argued, and factually sup-

ported the EMED defense and the court instructed the jury upon it. The instant case is therefore more analogous to *Wade v. Calderon, Wheeler,* and *Weighall,* where courts held that failure to bring forth corroborating or supporting evidence was not prejudicial. Counsel's omission of impartial expert testimony to supplement the EMED defense might have "had · some conceivable effect on the outcome of the proceeding." *Strickland,* 466 U.S. at 693, 104 S.Ct. 2052. It does not follow that this omission undermined the reliability of the proceeding. The Court must therefore "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. Accordingly, the Court rejects Petitioner's argument that Akamine's deficient performance prejudiced his trial.

### CONCLUSION

For the foregoing reasons, the Court does not find prejudice in Petitioner's trial pursuant to the requirements established by *Strickland v. Washington.* Accordingly, the Court DENIES Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

IT IS SO ORDERED.